John A. KELLY, Plaintiff-Appellant,

v.

FORD INSTRUMENT CO., DIVISION OF
SPERRY RAND CORPORATION,
Defendant-Appellee.

No. 112, Docket 27103.

United States Court of Appeals
Second Circuit.

Argued Dec. 4, 1961.

Decided Jan. 11, 1962.

Edward A. Groobert, Atty., Dept. of
Justice, Washington, D. C. (William H.
Orrick, Jr., Asst. Atty. Gen., and Alan
S. Rosenthal, Atty., Dept. of Justice,
Washington, D. C., and Joseph P. Hoey,
U. S. Atty., Eastern Dist. of New York,
Brooklyn, N. Y., on the brief), for plain-
tiff-appellant.

Martin C. Seham, New York City
(Herbert Prashker and Poletti & Freid-
in, New York City, on the brief), for
defendant-appellee.

Before WATERMAN, SMITH and
MARSHALL, Circuit Judges.

**J. JOSEPH SMITH, Circuit Judge.**

Plaintiff John A. Kelly, an employee of defendant Ford Instrument Co., Division of Sperry Rand Corporation (Ford) entered military service while in a laid-off status. On discharge from the service he was reemployed, but as a new employee. A declaratory judgment action seeking a declaration of entitlement to seniority rights on reemployment pursuant to the Universal Training and Service Act, 50 U.S.C.A.Appendix, § 459, was dismissed by the United States District Court for the Eastern District of New York, Walter Bruchhausen, Chief Judge, 192 F.Supp. 129, and plaintiff appeals.

The District Court held that under the terms of the employment contract between Kelly and Ford an employment relationship did not exist at the time of Kelly's entry into service within the meaning of the Act. We disagree, and hold that the reemployment provisions of the Act protected plaintiff so that he should have been accorded seniority rights on his return from the military service to his work at Ford.

Plaintiff was employed by Ford March 3, 1952. He and others were laid off April 23, 1954. May 25, 1954 he entered the armed services of the United States. March 28, 1956 Ford sent plaintiff a notice that it needed workers, and that under the collective bargaining agreement under which he was originally employed plaintiff was eligible to apply for reinstatement as a Senior Detailer, to appear April 4, 1956 for interview and employment processing. April 2, 1956 plaintiff's mother wrote Ford that plaintiff was in the service in Alaska, unavailable for reemployment until his enlistment should expire in May 1958. February 25, 1958 he completed military service and was honorably discharged. March 5, 1958 he was employed by Ford as a designer.

The Labor Agreement of May 1, 1953 to April 30, 1955 under which Kelly was originally hired, provides in part:

"Article VII—Seniority

"Section 5

"Subject to the following provisions, the lay-off of employees shall be in order of seniority, as defined in this Article, and recall in reverse order of lay-off provided that the employees retained or recalled are qualified to do the work available:
\* \* \*

"Section 7

"In computing length of employment for seniority purposes, as defined in Section 3 and 4, time lost as a result of any of the following shall be considered as included within the period of employment.

"(a) Military Leave of Absence.

"(b) Absence from the plant under the provisions of Article VI or any other authorized leave of absence.

"(c) Lay-off for a period less than provided by Section 9 of this Article.

\* \* \* \* \* \*

"Section 9

"All seniority rights shall be forfeited by:

"(1) Voluntary quitting of employment.

"(2) Discharge for 'cause.'

"(3) Continuous lay-off for a period in excess of:

The same number of consecutive months of lay-off as equals the number of months of employment where the employee has completed his probational period but had been employed for less than thirty-six months. Thirty-six consecutive months of lay-off where the employee had been employed for thirty-six months, but less than 10 years. Sixty consecutive months of lay-off where the employee had been employed for ten years or more."

The Labor Agreement of May 1, 1955 to June 15, 1957, provides in part:

"Article VII—Seniority

"Section 3

"Except as otherwise provided in this Section, the lay-off of employees in any departmental unit shall be in order of seniority, as defined in this Article, and recall shall be in reverse order of layoff, provided that the employees retained or recalled are qualified to do the work available.

\* \* \* \* \* \*

"Section 5

"In computing length of employment for seniority purposes, as defined in Section 1, 2, and 3, time lost as a result of any of the following shall be considered as included within the period of employment.

"(a) Military Leave of Absence.

"(b) Absence from the plant under the provisions of Article VI or any other authorized leave of absence.

"(c) Lay-off for a period less than provided by Section 7 of this Article.

\* \* \* \* \* \*

"Section 7

"All seniority rights shall be forfeited by:

"(1) Voluntary quitting of employment.

"(2) Discharge for 'cause.'

"(3) Continuous lay-off for a period in excess of:

The same number of consecutive months of lay-off as equals the number of months of employment where the employee has completed his probationary period but had been employed for less than thirty-six months. Thirty-six consecutive months of lay-off where the employee had been employed for thirty-six months, but less than 10 years. Sixty consecutive months of lay-off where the employee had been employed for ten years or more."

The Labor Agreement of November 19, 1956 to June 15, 1961, provides in part:

"Article VII—Seniority

"Section 3

"Except as otherwise provided in this Section, the lay-off of Employees in any departmental unit shall be in order of seniority, as defined in this Article, and recall shall be in reverse order of layoff, provided that the Employees retained or recalled are qualified to do the work available.

\* \* \* \* \* \*

"Section 5

"In computing length of employment for seniority purposes, as defined in Section 1, 2, and 3, time lost as a result of any of the following shall be considered as included within the period of employment.

"(a) Military Leave of Absence.

"(b) Absence from the plant under the provisions of Article VI or any other authorized leave of absence.

"(c) Lay-off for a period less than provided by Section 7 of this Article.

\* \* \* \* \* \*

"Section 7

"All seniority rights shall be forfeited by:

"(1) Voluntary quitting of employment.

"(2) Discharge for 'cause.'

"(3) Continuous lay-off for a period in excess of:

"The same number of consecutive months of lay-offs as equals the number of months of employment where the Employee has completed his probationary period but had been employed for less than thirty-six months. Thirty-six consecutive months of lay-off where the Employee had been employed for thirty-six months, but less than 10 years. Sixty consecutive months of lay-off where the Employee had been employed for ten years or more."

The statute involved, Section 9 of the Universal Military Training and Service

Act, 62 Stat. 614, 50 U.S.C.A.Appendix § 459, as amended, provides in part:

"(b) *Reemployment rights.*

"In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

\* \* \* \* \* \*

"(B) if such position was in the employ of a private employer, such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or

"(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case,

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\* \* \* \* \* \*

"(c) *Services considered as furlough or leave of absence.*

"(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

\* \* \* \* \* \*

"(g) *Reemployment benefits to persons enlisting or called to active duty.*

"(1) Any person who, subsequent to June 24, 1948, enlists in the Armed Forces of the United States (other than in a reserve component) and who serves for not more than four years (plus any period of additional service imposed pursuant to law) shall be entitled upon release from service under honorable conditions to all the reemployment rights and other benefits provided for by this section in the case of persons inducted under the provisions of this title \* \* \*."

Section 9 of the Selective Service Act of 1948, 62 Stat. 614, provides in pertinent part:

"(b) In the case of any such person who, in order to perform such

training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

\* \* \* \* \* \*

"(B) if such position was in the employ of a private employer, such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or

"(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case,

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\* \* \* \* \*

"(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to establish-

ed rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is hereby declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

Section 8 of the Selective Training and Service Act of 1940, 54 Stat. 890, provides in pertinent part:

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within forty days after he is relieved from such training and service—

\* \* \* \* \* \*

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\* \* \* \* \* \*

"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of

training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

 Plaintiff when he entered the service had been laid off by operation of a seniority system under his contract of employment. Under this contract he had a right of recall in seniority order, and continued to accumulate seniority while laid off. These attributes of employment demonstrate that although in a lay off status he continued to hold a "position (other than temporary) in the employ" of Ford within the meaning of the Universal Military Training and Service Act. Compare Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230. The Congressional purpose in the reemployment provisions of the Act was to preserve to the employee who entered service the employment benefits of his contract with his employer, so that he might return without loss of seniority, status or pay because of his military service. When Kelly entered service he was entitled to be rehired at the relative seniority earned under the contract if need arose for his labor at any time prior to the termination of the period fixed in the contract. When the need arose and he was asked to return on April 4, 1956, the period fixed in the contract had not ended. But for his military service, he was entitled to return to active status at that time. From that time forward he should have been treated as on military leave of absence under the employment contracts. His reinstatement therefore, should have been with the same relative seniority he would have enjoyed had he returned pursuant to the call on April 4, 1956. He is not advanced in his position on the escalator over those who were employed prior to his original employment. He does not, however, lose his position on the escalator by reason of his military service. In neither of the cases relied on by Ford, Edwards v. Capital Airlines, 84 U.S.App.D.C. 346, 176 F.2d 755 (D.C. Cir.1949) or Barbee v. Capital Airlines, 89 U.S.App.D.C. 335, 191 F.2d 507 (D.C. Cir.1951), were there contract provisions similar to those here. In Edwards, Edwards and Young were discharged and off the seniority roster entirely prior to entry into service, in Barbee, the release, although termed a furlough, was found to be intended as a termination of employment. However doubtful that finding may be (see dissent of Washington, C. J., 191 F.2d at 511), it serves to distinguish the case from Kelly's situation here. In determining Congressional intent: "we are to put ourselves so far as we can in the position of the legislature that uttered (the words chosen), and decide whether or not it would declare that the situation that has arisen is within what it wished to cover. Indeed, at times the purpose may be so manifest as to override even the explicit words used." Learned Hand, C. J., in Cawley v. United States, 2 Cir., 272 F.2d 443, 445.

 The Congressional policy is clear.[1] The Congress intended in its phrase "in the employ of a private employer" any relationship governed by a collective bargaining agreement that preserved a status accruing substantial employment rights in an individual against the employer, party to the agreement.

1. Sen. Thomas of Utah—explaining the bill S. 4164 to the Senate, 86 Cong. Record p. 10572 (76th Congress, 3rd session):
"the attempt of the committee to make secure the insurance privileges they might have gained in their jobs, to make secure their seniority, and to make secure all of the relations they had gained as a result of working."

The agreement here preserved such a status in Kelly.

The judgment is reversed and the action remanded for entry of summary judgment for plaintiff-appellant.